FILED
03 JAN 10 PM 4:33
U.S. ........ ...NT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TIMOTHY ROCHA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) CASE NO. _____ |
| | ) |
| GENERAL ELECTRIC COMPANY, | ) CV-03-PWG-0071-NE |
| a corporation | ) |
| Defendant. | ) |

## COMPLAINT

1. Plaintiff, Timothy Rocha (hereinafter referred to as "Rocha"), is a male, over the age of nineteen, of sound mind, and at all times relevant hereto was a resident of the Northern District of Alabama, Northeastern Division.

2. The Defendant, General Electric Company, (hereinafter referred to as "GE"), is a corporation organized under the laws of the State of New York and at all times relevant hereto was authorized to do business and was doing business in the Northern District of Alabama, Northeastern Division and was the employer of Rocha.

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331, 1343(3) and (4) and 2201; 42 U.S.C. Sections 1981(a), 2000(e)-5(f) and (g), as amended and 12101 et seq. This is a suit in equity, authorized and instituted pursuant to 42 U.S.C. Sections 1981(a), 2000(e) et. seq. as amended and 12101 et seq. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by the above statutes providing for injunctive and other relief against gender discrimination, disability discrimination and retaliation.

4. Rocha has fulfilled all conditions precedent to the institution of this action under 42 U.S.C. Section 2000(e) et. seq. as amended and 12101 et seq. Rocha timely filed his charge of discrimination within 180 days of the occurrence of the last discriminatory act. Rocha timely files this complaint within 90 days of the receipt of their right to sue letters received from the Equal Employment Opportunity Commission on October 15, 2002.

5. GE is an entity subject to suit under 42 U.S.C. Section 2000(e) et. seq. as amended and 12101 et seq. GE employs at least 15 persons. All actions complained of herein occurred in the Northern District of Alabama, Northeastern Division.

## COUNT I

### Gender Discrimination

6. Paragraphs one (1) through five (5) are realleged and incorporated herein by reference and made paragraph six (6).

7. Rocha began employment with GE in August of 1989 as a Level D-10 Processor. In approximately 1990 he was promoted to D-14 level and in 1994 was promoted to D-16 level working in the Warehouse.

8. Sometime in early 1996, Joan Jeffreys became the Warehouse Manager. Shortly thereafter, Jeffreys began and has continued a constant practice of falsely accusing Rocha of misconduct and disciplining him based on these false accusations.

9. On July 17, 1996, Jeffreys' falsely accused Rocha of being intoxicated at work and directed him to undergo blood alcohol testing. Rocha met with Neil Lumpkin and Larry Hamilton who informed Rocha they did not see any reason for the test. Mr. Lumpkin then called Jeffreys and explained to her what had gone on and they were not going to test Rocha and returned him to work.

10. On January 13, 1997, Rocha called work and asked if Jeffreys was at work or not. When Rocha arrived at work Jeffreys asked why he had called, stating that Rocha was "lucky to still be there". Rocha replied "for just calling, and asking if you were here at work?" and she replied that "it's your attitude". Rocha asked her to explain and she stated that he had been off the first week back from Christmas shutdown. Rocha had worked during the shutdown and had used personal days and three vacation days the week after Christmas shutdown, all of which was in keeping with company policy. Jeffreys told Rocha that he had to get her approval before using any vacation or personal days again.

11. On March 10, 1997, Jeffreys' falsely accused Rocha of not being in the warehouse on Monday, March 3, 1997, for approximately two hours. This was false and Rocha told Jeffreys this. She said that she had documentation from a witness, (her husband Brett, who is a supervisor at the plant). Rocha requested to see the documentation and she refused. Jeffreys informed Rocha she was going to write him up.

12. On March 11, 1997, Jeffreys called Rocha into her office. Larry Hamilton was present. Jeffrey's showed Rocha the disciplinary letter that she had drafted. Rocha informed her that the accusations were false. Rocha asked why she waited seven days to confront him with the false accusations and she stated she had to get her facts together. Rocha questioned her in front of Larry Hamilton regarding her other false accusations and threats as described above and she denied them. Rocha asked Hamilton what would happen if he refused to sign the letter and he said Rocha would be terminated. Having no choice, Rocha signed. The letter also contained false accusations regarding Rocha's my supposed confrontational behavior with co-workers. There had been rare occasions when Rocha had an argument with a co-worker; however, this was not unusual, as many employees have had arguments with one another. As a result of this accusation and in order to continue his employment,

Rocha was referred under GE's Employee Assistance Program to the Albany Clinic for evaluation and counseling.

13. On March 13, 1997, Rocha reported to the Albany Clinic. At that time he learned in addition to the accusations contained in the March 11, 1997, letter, he was also accused of abuse of alcohol. After the one visit to Albany Clinic, Rocha was released to return to work.

14. On March 13, 1997, Rocha filed a grievance against Jeffreys for harassment, false accusations, defamation, threatening behavior, showing favoritism to female employees and applying a double standard to male versus female employees. On March 18, 1997, Jeffreys' responded that "we do not practice harassment, false accusations, defamation of character, double standard policies, nor threats, nor does GE condone those actions. That was the only response to the grievance.

15. On August 22, 2001, Rocha had a confrontation with Mike Garner, a CO-employee, who yelled and cursed Rocha. Rocha yelled back and asked why he was cussing and Garner said "I'm cussing you so that you will get your paperwork into the office." Rocha did not respond.

16. On August 29, 2001, Rocha received a letter from Jeffreys again accusing him of displaying intimidating and threatening behavior towards co-workers. She informed Rocha that he was being demoted to a D-10 position (a demotion in rank and pay) and would also be suspended until he could be evaluated again through the Employee's Assistance Program at the Albany Clinic and that his return to work would be determined by the clinic. In addition to Jeffreys being at this meeting, Mike Thorpe, Second Shift Supervisor, and Linda Brooks, were also present. Rocha informed them that he had been going to the clinic for over a year and a half for grief counseling resulting from the death of his newborn son.

17. Rocha again went to Albany Clinic as directed. After one visit the clinic released him to return to work on August 30, 2001 with no restrictions.

18. Jeffreys conduct as described above is harassment based on Rocha's gender (male). During the time periods described above, female employees have engaged in the same conduct of which Rocha was falsely accused, and were not disciplined nor demoted.

19. As a result of the actions by the Defendant as described above, the Plaintiff was caused to suffer and continues to suffer loss of salary, compensation, commission and benefits, physical pain and suffering, medical expenses, humiliation, embarrassment and mental and emotional anguish.

WHEREFORE, PREMISES CONSIDERED, Rocha respectfully prays that this Honorable Court will assume jurisdiction of this action and after trial:

A. Issue a declaratory judgment the employment policies, practices, procedures, conditions and customs of GE are violative of the rights of Rocha as secured by 42 U.S.C. Sections 1981(a) and 2000(e) et. seq., as amended;

B. Grant Rocha a permanent injunction, enjoining GE, its employees, servants, agents and successors and those acting in concert with GE and at GE's request, for continuing to violate the above-cited laws;

C. Award Rocha an appropriate amount of compensatory and punitive damages, costs, expenses of prosecuting this action and attorney's fees;

D. Award Rocha lost wages and interest thereon;

E. Reinstate Rocha to his D-10 position or, in the alternative award him future lost wage

F. Rocha further prays for such other, special, additional and further relief and benefits as this Honorable Court may deem necessary and appropriate.

## COUNT II

### Discrimination based on a perceived disability

20. Paragraphs one (1) through nineteen (19) are realleged and incorporated herein by reference and made paragraph twenty (20).

21. On or about March 25, 1997, Rocha learned from the Albany Clinic that Jeffreys had contacted them concerning Rocha's behavior at work. They did not disclose any information to Jeffreys concerning their assessment. Further, they requested from Jeffreys documentation to obtain more information about Rocha's behavior on the job, explaining that the information on the referral that GE had made to the clinic had been rather vague. Jeffreys stated she would consult with Linda Brooks and contact the clinic. The clinic then received a call from Ms. Brooks. The clinic refused to release any other additional information. Ms. Brooks stated that she understood and would consult with GE's legal counsel.

22. In the summer of 2000, Rocha's wife became pregnant with their second child. During the pregnancy Rocha and his wife learned that the child would not survive the birth which unfortunately proved to be true. As a result, Rocha suffered from emotional problems for which he sought treatment at the Albany Clinic.

23. Rocha was released to return to work, with no restrictions, after one (1) visit on August 30, 2001. However, Rocha continued to seek treatment at the Albany Clinic for grief counseling in relation to the death of his child. These visits did not relate to his work situation. On September 13, 2001, Rocha missed an appointment at the clinic. The clinic then contacted GE and informed them that he had missed the appointment. Although Rocha had been released to return to work, the Albany Clinic continued to provide information beyond this date to GE regarding his personal grief counseling sessions.

24. As a result of the continued harassment by GE, Rocha sought advice from an attorney. In the process of his counseling sessions at Albany Clinic, his therapist began questioning him about the process of seeking an attorney and what he was telling the attorney and would convey this information to Linda Brooks with GE even though there was no need to do so.

25. As a result of the Albany Clinic releasing information to GE regarding my personal problems, Rocha ceased seeking treatment from them and began receiving treatment elsewhere. Rocha contacted the Albany Clinic and informed them that he would no longer be seeking treatment from them. The clinic then promptly contacted GE. Jerry Whitten then immediately approached Rocha very upset and began questioning why he had stopped his counseling sessions at the Albany Clinic. Rocha informed him that he was seeking treatment elsewhere. Whitten demanded to know where Rocha was seeking treatment and that Rocha give the company a release to get this information. Rocha refused. Whitten then told Rocha that if he did not provide a release, he would be terminated. Rocha then provided a limited release, relating only to his ability to perform his duties.

26. The actions of GE as described above are in violation of Rocha's rights to be free from employment discrimination based on a perceived disability. Rocha was released to return to work with no restrictions on August 30, 2001. Consequently, Rocha suffered from no disability, which required any information regarding his counseling sessions to be sought by, or provided to GE. Yet GE continued to request and receive confidential, highly personal information regarding Rocha that had nothing to do with his work performance and to share this information with others who had no "need to know' the information. When Rocha attempted to stop this illegal transfer of information by seeking treatment elsewhere, he was threatened with termination.

27. As a result of the actions by the Defendant as described above, the Plaintiff was caused to suffer and continues to suffer physical pain and suffering, medical expenses humiliation, embarrassment and mental and emotional anguish.

WHEREFORE, PREMISES CONSIDERED, Rocha respectfully prays that this Honorable Court will assume jurisdiction of this action and after trial:

A. Issue a declaratory judgment the employment policies, practices, procedures, conditions and customs of GE are violative of the rights of Rocha as secured by 42 U.S.C. Section 12101;

B. Grant Rocha a permanent injunction, enjoining GE, its employees, servants, agents and successors and those acting in concert with GE and at GE's request, for continuing to violate the above-cited law;

C. Award Rocha an appropriate amount of compensatory and punitive damages, costs, expenses of prosecuting this action and attorney's fees;

D. Rocha further prays for such other, special, additional and further relief and benefits as this Honorable Court may deem necessary and appropriate.

## COUNT III

### Retaliation

28. Paragraphs one (1) through twenty-seven (27) are realleged and incorporated herein by reference and made paragraph twenty-eight (28).

29. On November 15, 2001, Rocha filed a charge of discrimination with the Equal Employment Opportunity Commission, against GE regarding the above-described conduct.

30. Beginning Monday, July 15, 2002 through Thursday, July 18, 2002, Rocha worked in a position for GE which involved repetitive lifting (approximately 4,000 pieces per shift) of heavy pipe. Through this period his back increasingly became sore, tight, and suffered from burning sensations but

he was able to continue working during this period. On Sunday morning July 21, 2002, Rocha began having problems moving. On Monday morning July 22, 2002, pursuant to GE policy, Rocha reported his injury to the nurse at GE. He was immediately referred to a physician who diagnosed his problem as lower lumbar strain. He was off work for approximately three (3) weeks and upon returning, was informed by Jerry Whitten that his workmen's compensation benefits were being denied because there was not clear and convincing proof that his injury arose out of and in the course of my employment. Rocha informed Whitten that he was injured at work and that as soon as he realized his injuries would prevent him from continuing to work, he notified GE.

31. In Rocha's EEO charge identified above, he had identified Jerry Whitten as one of the management employees who had discriminated against him.

32. Rocha is informed, believes and thereby alleges that the denial of my workmen's compensation benefits was in retaliation for making my EEO charge as identified above. This is in violation of my rights under the American with Disabilities Act as well as under Title VII 42 U.S.C. 2000(e), et. seq. As a result, Rocha suffers and continues to suffer mental and emotional anguish, loss of salary, pay, compensation and benefits.

WHEREFORE, PREMISES CONSIDERED, Green respectfully prays that this Honorable Court will assume jurisdiction of this action and after trial:

A. Issue a declaratory judgment the employment policies, practices, procedures, conditions and customs of the City of Bessemer are violative of the rights of Green as secured by 42 U.S.C. Sections 1981(a), 1983 and 2000(e) et. seq., as amended;

B. Grant Rocha a permanent injunction, enjoining GE, its employees, servants, agents and successors and those acting in concert with GE, and at GE's request, for continuing to violate the above-cited laws;

C. Award Rocha an appropriate amount of compensatory and punitive damages, costs, expenses of prosecuting this action and attorney's fees;

D. Award Rocha any and all reasonable workmen's compensation benefits;

E. Green further prays for such other, special, additional and further relief and benefits as this Honorable Court may deem necessary and appropriate.

**PLAINTIFF DEMANDS TRIAL BY**

**STRUCK JURY.**

                                      Respectfully submitted

                                      JAMES M. WOOTEN
                                      Attorney for the Plaintiff
                                      State Bar No. ASB-1630-040J
                                      Suite 1429
                                      2000 First Avenue North
                                      Birmingham, AL  35203
                                      (205) 322-7707