FILED
2005 Jun-27 PM 05:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ___ FEPA<br>_X_ EEOC | 130A200491 |

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. John Timothy Rocha | (256) 351-9413 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 76 Whisper Wood Private Drive, | Summerville, AL, 35670 | 9/1/66 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| General Electric Company | +500 | (256) 355-3119 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 2328 Point Mallard Drive, S.E., | Decatur, AL, 35609-2223 | Morgan |

| NAME | | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| | | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

___ RACE  ___ COLOR  _X_ SEX  ___ RELIGION  ___ NATIONAL ORIGIN
___ RETALIATION  ___ AGE  _X_ DISABILITY  ___ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)     LATEST (ALL)
July, 1996              8/29/01
XX CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

SEE ATTACHED SHEET

**RECEIVED**
**NOV 15 2001**
**EEOC**

---

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the process of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements)<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>X _John Timothy Rocha_<br>Date _____ Charging Party (Signature) | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month, and year) |

I began employment with Respondent in August of 1989 as a Level D-10 Processor. In approximately 1990 I was promoted to D-14 level and in 1994 was promoted to D-16 level working in the Warehouse.

Sometime in early 1996, Joan Jeffreys became the Warehouse Manager. Shortly thereafter, she began and has continued a constant practice of falsely accusing me of misconduct at work and has disciplined me based on these false accusations. Further, she has forced me to undergo psychiatric/psychological counseling without justification under threat of termination, more specifically:

On July 17, 1996, Jeffreys' falsely accused me of being intoxicated at work and attempted to force me to undergo blood alcohol testing. I met with Neil Lumpkin and Larry Hamilton who proceeded to tell me they did not see any reason for the test. Mr. Lumpkin then called Jeffreys and explained to her what had gone on and they were not going to test me and returned me to work.

On August 26, 1996, Jeffreys' falsely accused me of not performing my duties but no action was taken.

On October 16, 1996, Jeffreys' falsely accused me of confrontation with another employee in the plant parking lot. This accusation, according to Ms. Jeffreys, was based on a "anonymous tip" from an unidentified telephone call to Ms. Jeffreys. No action was taken.

In late 1996/early 1997, my wife was several months pregnant and became severely dehydrated. I had taken her to an emergency room and left a message on Jeffreys' answering machine that I would not be at work that day. I also called a co-worker, Elvis Hallman, and asked him to let Jeffreys know what was going on when he got to work. When I arrived at work the next day, Jeffreys called me into her office and asked what was going on, that she had called all of the emergency rooms in Decatur to find out if I was telling the truth or not. She said that she did not know my wife was pregnant and why hadn't I told someone. I informed her it was no one's business. Jeffreys said that she had told several people at work that my wife was pregnant and I asked her to not tell anyone else as it was no one's business at work and also asked her to inform the people she had told not to say anything to anyone else.

On January 13, 1997, I called work and asked if Jeffreys was at work or not. When I arrived at work that day she called me in her office and asked why I had called, informing me that I was "lucky to still be there" and I replied "for just calling, and asking if you were here at work?", and she replied that "it's your attitude". I asked her to explain and she stated that I was off the first week back from Christmas shutdown. I had worked during the shutdown and had used personal days and three vacation days the week after Christmas shutdown, all of which was in keeping with company policy. Jeffreys told me that I had to get her approval before I used any vacation or personal day again.



**RECEIVED**

**NOV 1 5 2001**

**EEOC**

On March 10, 1997, Jeffreys' falsely accused me of not being in the warehouse on Monday, March 3, 1997, for approximately two hours. This was false and I told Jeffreys this. She said that she had documentation from a witness, her husband Brett, who is a supervisor at the plant. I asked if I could see the documentation and she refused. I told her there was no way I could have been gone that long, that all my orders had been completed. Jeffreys then said she was going to "write me up", that she had talked to me before about leaving the plant during lunch. There had been one prior occasion when I had left mistakenly during lunch without clocking out. Jeffreys again stated she was going to write me up.

On March 11, 1997, Jeffreys called me into her office. Larry Hamilton was present. She then showed me the letter that she had typed up. I informed her that the accusations were false. She read me the letter and I continued to disagree. I asked why she waited seven days to confront me with the false accusations and she stated she had to get her facts together. I questioned her in front of Larry Hamilton regarding her other false accusations and threats as described above and she denied them as well as denying providing the private information concerning my wife's pregnancy. Larry Hamilton did not seem to be concerned about these incidences. I asked Hamilton what would happen if I refused to sign the letter and he said I would be terminated. Having no choice I signed. The letter also contained false accusations regarding my supposed confrontational behavior with co-workers. There have been rare occasions when I have had an argument with a co-worker, however, this is not unusual and just about every employee working in the warehouse and at the plant has had an argument with another co-employee at some point and time. As a result of this accusation and in order to continue my employment, I was referred under the Employee Assistance Program to the Albany Clinic.

On March 13, 1997, I reported to the Albany Clinic as directed. At that time I learned in addition to the accusations contained in the March 11, 1997, letter, I was also accused of abuse of alcohol. In meeting with the counselor I denied all the accusations and told him that Jeffreys had been treating me unfairly by simply receiving accusations from other people and accusing me of those accusations without listening to my side of the story. The counselor suggested that as I had significant differences with Ms. Jeffreys that I should meet with her for a resolution. After the one visit to Albany Clinic, the Clinic released me to return to work which I did and consequently, on March 13, 1997, I filed a grievance against Ms. Jeffreys for harassment, false accusations, defaming my character, threatening me, showing favoritism to female employees and applying a double standard to male versus female employees. I asked that these problems be resolved. On March 18, 1997, Jeffreys' responded that "we do not practice harassment, false accusations, defamation of character, double standard policies, nor threats, nor does GE condone those actions. That was the only response to the grievance that I received.

On or about March 25, 1997, I learned from the Albany Clinic that Joan Jeffreys had contacted them concerning my behavior at work. They did not disclose any information to Jeffreys concerning their assessment of me. Further, they requested from Jeffreys documentation to obtain more information about my behavior at work explaining that the information on the referral that GE had made to the Clinic had been

RECEIVED
NOV 15 2001
EEOC

rather vague. Evidently, Jeffreys stated she would consult with Linda Brooks and contact the clinic. The clinic then received a call from Ms. Brooks and the clinic refused to release any other additional information. Ms. Brooks stated that she understood and would consult with GE's legal counsel.

In the summer of 2000, my wife was pregnant with our second child. During the pregnancy we learned that my son would not survive the birth which unfortunately proved to be true. As a result, I suffered from emotional problems for which I sought treatment at the Albany Clinic.

On August 22, 2001, I finished work and was going into the office. Mike Garnner, a co-employee, began yelling and cussing at me and I yelled back at him and asked why he was cussing and Garder said I'm cussing you so that you will get your paperwork into the office. I did not respond. Larry Cannon and Elvis Hallman were co-workers who witnessed the incident.

On August 29, 2001, I received a letter from Jeffreys again accusing me of displaying intimidating and threatening behavior towards co-workers. I asked Jeffreys what this was about and she again referred me back to the letter. She then informed me that I was being demoted to a D-10 level employment and would also be suspended until I could be evaluated again through the Employee's Assistance Program at the Albany Clinic and that my return to work would be determined by the clinic. In addition to Jeffreys being at this meeting, Mike Thorpe, Second Shift Supervisor, and Linda Brooks, were also present. I informed them that I had been going to the clinic for over a year and a half for grief counseling resulting from the death of my son. I again went to Albany Clinic as directed and saw Dr. Love. After one visit the clinic released me to return to work on August 30, 2001. Upon my return to work, Jerry Whitten threatened to terminate me for any reason whatsoever.

I continued to seek treatment at the Albany Clinic for grief counseling in relation to the death of my son. As the clinic had released me to return to work under GE's EAP Program, these visits did not relate to my work situation. On September 13, 2001, I missed an appointment at the clinic. The clinic then evidently contacted GE and informed them that I had missed the appointment. It is my belief that although I had been released to return to work, the Albany Clinic continued to provide information beyond this date to GE regarding my personal grief counseling sessions.

As a result of the continued harassment by GE, I sought advice from an attorney. In the process of my counseling sessions at the clinic, my therapist Tamara Tallant, began questioning me about the process of seeking an attorney and what I was telling the attorney and would convey this information to Linda Brooks with GE even though there was no need to do so.

As a result of the Albany Clinic releasing information to GE regarding my personal problems, I ceased seeking treatment from them and began seeking treatment from another therapist Brenda Baird and another psychiatrist, Dr. Scott Hillard in

RECEIVED
NOV 15 2001
EEOC

Decatur, Alabama. I contacted the Albany Clinic and informed them that I would not longer be seeking treatment from them. The clinic then promptly contacted GE. Jerry Whitten then immediately approached me very upset and began questioning me why I had stopped by sessions at the Albany Clinic. I informed him that I was seeking treatment elsewhere and he demanded to know where I was seeking treatment and demanded that I give the company a release to get this information.

Based on my personal experience, it is my belief that Joan Jeffreys is harassing me based on my gender. It has been my observation that other female employees who have engaged in the same conduct of which I had been falsely accused, had not been written up nor demoted. Further, GE is discriminating against me based on their belief and perception that I suffer from a mental disability which I do not. GE has used this as a basis to force me on two different occasions to seek counseling in order to return to work and further has used these opportunities to illegally obtain personal, private and medical information from the Albany Clinic which is a violation of my rights under the American with Disabilities Act.

**RECEIVED**

**NOV 15 2001**

**EEOC**